In the Matter of the Application for Letters of Guardianship of the Person and Estate of RALF MANFRED WEINMANN, an Infant.

Surrogate's Court, Westchester County, January 14, 1942.

*Wachtell, Manheim & Grouf* [*Arthur D. Brennan* of counsel on reargument], for the petitioner.

MILLARD, S. Petitioner, an infant over the age of fourteen, has applied for the issuance of letters of guardianship of his person and estate to his father, Hans Weinmann, with whom he resides. The mother of petitioner has consented to such appointment. It appears that the father of said infant is a resident alien, being a former subject of the Republic of Czechoslovakia. He asserts, however, that he is an adherent of the Czechoslovakian government in London and is not a citizen, national or subject of Germany, or of any other country with which the United States is at war. The father further represents that since leaving Czechoslovakia in 1938 he resided in England from October 5, 1938, to July, 1940, in the Dominion of Canada from July, 1940, to March, 1941, and in the United States since March, 1941; that immediately upon his arrival he filed an application for a certificate of arrival and on September 29, 1941, declared his intention to become an American citizen.

The statute confers upon an infant over the age of fourteen the right to nominate his guardian. (Surr. Ct. Act, § 175.) Although the statute does not prohibit the appointment of a resident alien as a guardian or other fiduciary, such nomination of a guardian is subject in all cases to the approval of the court. (*Matter of Stuart*, 280 N. Y. 245; *Matter of Bock* [*Breitung*], Id. 349.) As was stated by the Court of Appeals in *Matter of Stuart* (*supra*, 250): " The Legislature has granted to Surrogates a wide discretion, and they are not required to appoint the person nominated by the infant or the father or mother. In all cases involving the appointment of a guardian for an infant the paramount question is whether the interest of the infant will be promoted by the appointment to be made."

Under all the circumstances in the instant case and in the exercise of my discretion, the application for the appointment of petitioner's

father as guardian of his property is denied and I shall appoint, as such guardian, a bank or trust company to be named in the decree.

The application for letters of guardianship of the person of said petitioner is granted and such letters will issue to his father.

Submit decree accordingly.

(Opinion on reargument, February 27, 1942.)

By decision of this court dated January 14, 1942, the application of the petitioner, an infant of the age of sixteen years, for the appointment of his father as guardian of his property was denied. The petitioner now seeks a reargument and rehearing of said application. The application for such reargument is hereby granted.

The main argument now advanced in support of petitioner's contention that the nomination of his father, Hans Weinmann, should be approved, is that the appointment of his father will save the infant's estate approximately $22,000 to $25,000 in statutory commissions to which a corporate fiduciary would be entitled. Subsequent to the rendering of my original decision as aforesaid, and in support of the instant application, the father now offers, for the first time, to waive his statutory commissions. It is urged that the court should take cognizance of such a resulting saving and should not unnecessarily subject the infant's estate to the expense incident to the appointment of a corporate fiduciary. Were I of the opinion, under all the circumstances, that the best interests of this infant dictated the approval of the nomination of his father as guardian of his property, such nominee would be required to furnish a bond in the full value of the assets coming into his possession, together with the anticipated income thereof, for a period of three years. (Surr. Ct. Act, § 180.) It is estimated that the cost of such bond would be $3,060 per annum, or a total of $15,300 for the remaining five-year period of petitioner's infancy. It is elementary, of course, that no bond is required of a corporate guardian. It is, therefore, apparent that the net saving to the infant's estate would be substantially less than the amount claimed. Irrespective of the actual saving effected, however, it seems to me that in view of the existing state of war resulting in rapidly changing and unsettled economic conditions both here and abroad, such slight monetary gain is clearly outweighed by the advantages resulting from the management of petitioner's estate by a corporate guardian. Under such circumstances greater stability may be expected in the administration of an estate by a domestic bank or trust company, and in the laws relating to such administration, than would be anticipated in the case of an individual fiduciary who was an alien, even though not an enemy alien. The recent

Executive "Freezing" Orders issued by our President, the regulations promulgated by our Treasury Department pursuant to said Executive Orders, and the many amendments to such regulations indicate the widespread instability of our laws relating to aliens affected thereby.

Furthermore, on the reargument herein, counsel for petitioner stated to the court that all of the stock of the Eagle Management Corporation, the present holder of the assets belonging to this infant, is owned and held by petitioner's father, Hans Weinmann. It is not clear, and the papers submitted do not explain, the source of the funds allegedly belonging to the infant, nor do they explain the manner in which such assets found their way into the Eagle Management Corporation. Evidently this is a family holding corporation. The only basis, however, for determining the interests of the infant in the assets held by said corporation is a general allegation in the petition of the infant, annexed to which is an affidavit of property made by one Rudolph Koppl, of the city of New York, and further explained by an affidavit of petitioner's father submitted in support of the instant motion for reargument and rehearing. In making this observation I do not intend to imply that there has not been a full disclosure of the infant's assets, my sole purpose being to indicate the possibility of an adverse interest between the infant and his nominee.

Considering this and all the other existing circumstances, I am convinced that the interests of this infant will be best promoted by the appointment of a corporate fiduciary. Accordingly, upon reargument my original decision of January 14, 1942, is adhered to in all respects.

Submit decree accordingly.